Frank TORELLI, Jr.

v.

Caspar WEINBERGER, Secretary of Health, Education and Welfare.

Civ. A. No. 75–1054.

United States District Court, E. D. Pennsylvania.

July 2, 1976.

Louis J. Sinatra, Chester, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., and Jeffrey H. Simcox, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

A. LEON HIGGINBOTHAM, Jr., District Judge.

This is an action under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Wel-

fare [1] ("Secretary"), denying claimant Frank Torelli's application for disability benefits. Claimant filed his initial application for disability benefits on December 14, 1973. After denial of this application, Torelli was granted a hearing before the Administrative Law Judge on July 1, 1974. On October 8, 1974, the Administrative Law Judge determined that the claimant was not entitled to disability benefits. This decision was affirmed by the Appeals Council on February 14, 1975. Both parties to this lawsuit have filed motions for summary judgment. A thorough review of the administrative record and briefs compels me to conclude that the Secretary's denial of claimant's application for disability benefits was indeed supported by "substantial evidence." Therefore, the plaintiff's motion for summary judgment is DENIED and the defendant's motion for summary judgment is GRANTED.

The claimant was born on July 7, 1928. Other than completion of the ninth grade and one thousand hours of instruction in a beauty culture school, the claimant had no further education and/or training. After graduation from beauty culture school in 1948, claimant worked solely as a hairdresser. In May, 1972 Torelli was forced to cease his work for a time in order to undergo a right radical neck dissection and total laryngectomy. This surgical procedure was required in order to treat the claimant for cancer of the larynx. By October, 1972 Torelli had resumed his work, on a part-time basis, as a hairdresser and continued to perform in that capacity until June, 1973. At that time he again underwent surgery for the removal of a benign, but inflamed, lymph node from his right shoulder.

As a result of his first operation, the claimant was forced to master the art of esophageal speech. Torelli believed that he was furloughed from his part-time job because the customers found his manner of speech and breathing offensive. (Tr. 53–55).

The claimant testified that he was unable to undertake substantial gainful employment after July 1, 1973 because of the following physical limitations: that he was unable without assistance, to raise his right arm more than forty-five degrees from his right side (Tr. 37); that his hand and then his entire arm became numb after a few moments of keeping his right hand in one position (Tr. 37, 42); that "talking" beyond an hour caused the muscles in his neck to stiffen (Tr. 38); that dust and/or fumes bothered him but not cigarette smoking (Tr. 38, 68–69); and that he breathed better in air conditioned rooms (Tr. 39). The claimant did not contend that his cancerous condition had recurred.

The medical evidence in this action consisted of a one-page report and answers to a questionnaire prepared by Dr. William Gilliam and a one-page opinion letter written by Dr. Lawrence J. McStavog, the physician who performed both operations on the plaintiff. Dr. Gilliam reported that Mr. Torelli suffered from aerophagia, due in part to previous surgery, diverticulosis coli, and distortion of the distal esophagus (Tr. 122, 124). Dr. Gilliam expressed no opinion as to the extent of Mr. Torelli's alleged disability.

On the other hand, Dr. McStavog concluded that Mr. Torelli was "completely disabled and should qualify for disability benefits." Moreover, Dr. McStavog observed, at the time that he discovered the inflamed node in Torelli's right shoulder, that his patient was "becoming depressed and he [Mr. Torelli] said that he did not give a damn about his life." After the removal of the inflamed node, Dr. McStavog said that Mr. Torelli's condition was excellent except for "his periodic periods of depression." Mr. Torelli, according to Dr. McStavog, continued to suffer from pain in his shoulder and around his stoma, as well as from crusting and bleeding of the trachea when he was exposed to cold air. Finally, Dr.

1. David Mathews succeeded Caspar Weinberger as Secretary of Health, Education and Welfare on August 11, 1975. David Mathews should be substituted for Caspar Weinberger as the defendant in this suit. However, no further action need be taken to continue this lawsuit by reason of the change in Cabinet personnel. 42 U.S.C. § 405(g).

McStavog found that because of his tracheal condition, Mr. Torelli should not take a job in a dust-filled factory (Tr. 147).

A vocational expert, Dr. Philip Spergel, testified at the hearing. In response to a question assuming the truth of Torelli's complaints, Dr. Spergel said that the claimant would be unable to return to his former occupation as a hairdresser (Tr. 71–75). However, Dr. Spergel identified several other jobs in relatively clean working conditions which he felt Torelli could undertake e. g., inspector, sorter, marker, electronics assembler, tube tester, fuel examiner, and denture packer. Dr. Spergel noted that none of the above jobs were in totally dust-free environments and that "depending on his [Torelli's] individual tolerance, any atmosphere could be disastrous." (Tr. 75–76). Approximately sixty percent of the jobs recommended were not likely to be in air conditioned offices and/or plants (Tr. 77). Dr. Spergel said that he would need both a psychiatric and psychological evaluation of the claimant in order to reach any conclusion on psychological impediments which might preclude Torelli from undertaking any job (Tr. 85–86).

In denying Torelli's claim for disability benefits, the Administrative Law Judge took judicial notice of the claimant's cigarette smoking (Tr. 68–69), and of the fact that Torelli had driven from Washington, D. C. to the administrative hearing in Philadelphia in his unairconditioned car. (Tr. 33–34).

■■ This Court, in reviewing a decision of the Secretary, must determine whether the Secretary's action is supported by "substantial evidence" contained in the administrative record, that is, such "relevant evidence as a reasonable person might accept to support the conclusion" that Frank Torelli is not entitled to disability benefits. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); see also *Palmer v. Celebrezze,* 334 F.2d 306, 308 (3d Cir. 1964). Of course, the Court is not

entitled to conduct a trial *de novo* on claimant's entitlement to disability benefits, for all findings of fact made by the Secretary which are supported by substantial evidence are conclusive. *Richardson v. Perales, supra.*

The Administrative Law Judge made extensive findings of fact in this case, the most important of which are as follows:

3. That the claimant had carcinoma which required a radical neck dissection and total laryngectomy in June 1972 and after a recuperative period returned to work on a part-time basis, i. e., substantial gainful activity, in October 1972 with further related surgery in June 1973.[2]

4. That the residuals of claimant's 1972 surgery did not prevent a return to the part-time hairdressing and would not prevent a continuation of the hairdressing work.

5. That claimant's tolerance of vapors, fumes and other pollutants has not been established as being so low as to preclude his performing the duties of the jobs representatively identified by the Vocational Expert.

6. That considering the claimant's residual physical capacity and his vocational background, he is not only able to return to hairdressing but is able to perform the various jobs identified above by the Vocational Expert.

7. That the jobs identified by the Vocational Expert exist in various substantial numbers in the region where claimant resides as well as in other areas of the country. (Tr. 16).

Furthermore, the Administrative Law Judge made an extensive inquiry into the claimant's physical symptomatology and apparent limitations following his laryngectomy. The Administrative Law Judge focused, not only on the ailments catalogued in the claimant's application for disability benefits, but also on possible difficulties claimant suffered in the use of his left arm

---

2. The claimant testified, in response to a question from the Administrative Law Judge, that after the laryngectomy he worked forty percent of his normal hours at the beauty shop (Tr. 66–67).

and legs (Tr. 31–44). The claimant was also questioned concerning periodic physical examinations following his surgery, medication used, and any current treatment he was required to undergo to alleviate or arrest physical ills (Tr. 40). At the hearing, the Administrative Law Judge also actively questioned the claimant with respect to job applications made following the latter's furlough from the beauty parlor in June, 1973. The claimant testified that he applied for positions as a Xerox machine cleaner, a beautician, a messenger-driver, and as an X-ray technician. Torelli also sought training for other occupations from a state agency (Tr. 34, 40–43).

A claimant bears the burden of proving that he has a disability within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5). In order to prove that he is disabled the claimant must satisfy a two-part test: (1) he must show the extent of his physical or mental impairment; and (2) he must demonstrate that the impairment results in an inability to engage in substantial gainful activity. *Bujnovsky v. Celebrezze,* 343 F.2d 868, 870 (3d Cir. 1965).

With respect to the first test, the claimant has certainly established some physical impairment. The claimant will never talk in a normal voice, and it appears that he has limited use of his right arm. However, there is substantial evidence that the claimant's physical difficulties did not preclude him from undertaking substantial gainful activity, and thus, claimant did not satisfy the second requirement for disability benefits.

On the one hand, the record reveals that, subsequent to his laryngectomy, the claimant suffered from diverticulosis coli and an irritable colon syndrome, neither of which were alleged to be of sufficient seriousness as to mandate the award of disability benefits. Dr. McStavog, the claimant's own physician, opined that, following the June, 1973 surgery, Torelli's condition was excellent except for periods of depression. On the other hand, the same doctor urged that the claimant was "completely disabled" and Mr. Torelli's testimony on the extent of his

physical problems would appear to support that conclusion.

However, the Administrative Law Judge, as the trier of fact, has the duty to resolve any conflict in the evidence presented at a disability hearing. *Richardson v. Perales, supra,* 402 U.S. at 399, 91 S.Ct. 1420. In addition, although testimony of pain unaccompanied by objectively observable symptoms can support a finding of disability, nonetheless, the finder of fact is entitled to reject the claimant's testimony of his subjective pain entirely, as long as that rejection and the reasons therefore are stated in the administrative findings of fact. *Baerga v. Richardson,* 500 F.2d 309, 312–13 (3d Cir. 1974).

In this case, the Administrative Law Judge specifically considered the subjective symptomatology of Mr. Torelli and the statement of Dr. McStavog, evidenced by findings of fact numbers four and five. Furthermore, the Administrative Law Judge posed a hypothetical question for the vocational expert premised on the truth of Torelli's testimony. However, several factors militated against a finding that Torelli was disabled. The claimant resumed his work as a hairdresser following his initial surgery despite his assertion of sensitivity to fumes and dust. Both of these pollutants were abundantly present in that working environment in the form of hairsprays, dyes, and cut hair. After his second operation, Torelli again attempted to secure work in his former occupation despite his claim that he had limited use of his right arm and that he had almost severed a client's ear while cutting hair. Torelli applied for jobs where he would be exposed to strong fumes. Finally, the claimant smoked cigarettes.

Although none of this evidence in isolation warranted a denial of Torelli's application, when taken as a whole it provided a substantial basis for a finding that he was not entitled to disability benefits.

The claimant misapprehends the current state of the law under the Social Security Act. Torelli urges that since few,

if any, firms will actually employ him he is entitled to disability benefits. However, the Third Circuit, in *Gentile v. Finch,* 423 F.2d 244 (3d Cir. 1970), specifically held that proof of "whether or not the claimant would be hired" was irrelevant after the 1967 amendments to the Social Security Act. The claimant is precluded from receiving disability benefits so long as a vocational expert, after consideration of the claimant's disability, age, education and training, is able to identify jobs that exist in significant numbers in the economy which Torelli could fill. I can only reaffirm the following statement of the panel in *Gentile v. Finch:*

> Although it is very harsh to deny disability benefits to one whose impairments will cause employers to refuse to hire him for jobs he can still perform, we are bound by the explicit Congressional command and by the substantial evidence supporting the Secretary's determination.

423 F.2d at 248.

The defendant's motion for summary judgment is GRANTED.